**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
KAREN GAMBLE,                    )
                                 )
              Plaintiff,         )    CIVIL ACTION
                                 )
v.                               )    No. 09-1002-MLB
                                 )
MICHAEL J. ASTRUE, Commissioner  )
of Social Security,              )
                                 )
              Defendant.         )
                                 )
```

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Before the court are the following:

(1)   United States Magistrate Judge Gerald B. Cohn's Recommendation and Report (Doc. 19); and

(2)   Defendant's objections (Doc. 20).

Magistrate Judge Cohn's April 29, 2010, Recommendation and Report (R and R) recommends that this case be reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g). Defendant objects only to Magistrate Judge Cohn's conclusion "that the ALJ erred by failing to make every reasonable effort to obtain updated medical treatment records from the Good Samaritan Clinic." (Doc. 19 at 14). After reviewing the appropriate portions of the administrative record as well as the briefs submitted to Magistrate Judge Cohn, the court adopts the Recommendation and Report.  The decision of the Commissioner is reversed and remanded.

**II.  STANDARDS**

The standards this court must employ upon review of defendant's objection to the Recommendation and Report are clear.  See generally

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. First, only those portions of the Recommendation and Report defendant specifically identified as objectionable will be reviewed. See Gettings v. McKune, 88 F. Supp. 2d 1205, 1211 (D. Kan. 2000). Second, review of the identified portions is de novo. Thus, the Recommendation and Report is given no presumptive weight. See Griego v. Padilla, 64 F.3d 580, 583-84 (10th Cir. 1995).

The ALJ's decision is binding on the court if supported by substantial evidence. See 42 U.S.C. § 405(g); Dixon v. Heckler, 811 F.2d 506, 508 (10th Cir. 1987). The court must determine whether the record contains substantial evidence to support the decision and whether the ALJ applied the proper legal standards. See Castellano v. Sec'y of Health and Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (interpreting "substantial evidence" as found in the original form of section 10(e) of the NLRA)). "Evidence is not substantial 'if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion.'" Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

### III. ANALYSIS

The claimant bears the burden of proving disability in a social security case. 20 C.F.R. § 404.1512(a). Yet, the ALJ "will make

every reasonable effort[1] to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d).

> [B]ecause a social security disability hearing is a nonadversarial proceeding, the ALJ is "responsible in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" (Citations omitted). Generally, this means that the "ALJ has the duty to ... obtain [ ] pertinent, available medical records which come to his attention during the course of the hearing." Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). Moreover, the ALJ's "duty is heightened" when a claimant, like [plaintiff], appears before the ALJ without counsel. (Citations omitted).

Madrid v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006). "The degree of effort required by the ALJ to develop the record does vary from case to case[.]" Graham v. Apfel, No. 97-6373, 1998 WL 321215, at *2 (10th Cir. 1998).

Plaintiff alleges disability because dysthymic disorder and chronic kidney and urinary tract infections. (Doc. 9 at 21). At the hearing on August 24, 2007, plaintiff told the ALJ that she was treated at the Good Samaritan Clinic "last month." (Doc. 19 at 6).

---

[1] "Every reasonable effort" means that we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of our followup request to reply, unless our experience with that source indicates that a longer period is advisable in a particular case.
20 C.F.R. § 404.1512(d)(1).

The ALJ did not have plaintiff's medical records past July 2006. The ALJ gave plaintiff two weeks to obtain the medical records and told her to ask for help if she ran into trouble. The ALJ also told plaintiff to notify him if the clinic tried to charge plaintiff too much for the records. There is no evidence in the record that plaintiff provided the additional medical records or requested assistance.

First, defendant argues that the ALJ's duty does not include seeking additional medical records after giving plaintiff two additional weeks to obtain her records and that the ALJ's duty does not require him to act as plaintiff's counsel. This argument is inconsistent with the requirements of 20 C.F.R. § 409.1512(d)(1). The ALJ told plaintiff to ask for assistance if she needed help. The ALJ should have told plaintiff what § 409.1512(d)(1) requires and then should have done what it says. Defendant offers no explanation why he did not do so.

The court finds that the ALJ under the facts of this case had a duty to obtain plaintiff's additional medical records. Plaintiff was pro se and indicated confusion after the ALJ told her to obtain the additional records. The ALJ was on notice that plaintiff had been to the Good Samaritan Clinic one month prior to the August 24, 2007, hearing and further that additional medical records might be available. The records ranged in dates from August 7, 2006, to June 25, 2007. They were the most recent records in the 12 months prior to the ALJ's decision. See Breedlove v. Callahan, No. 97-7024, 1997 WL 572145, at *1 (10th Cir. Sept. 8, 1997) (stating that the ALJ's duty includes the requirement that the ALJ develop a complete medical

record by obtaining medical evidence for at least the twelve months prior to the date the claimant filed the application for benefits.").

The court agrees with Magistrate Judge Cohn that the ALJ did not make the requisite effort to obtain plaintiff's medical records. "The fact that [p]laintiff did not specifically ask for help in procuring the medical records in question does not relieve the ALJ of his duty to develop the record." Olden v. Astrue, No. CIV-07-453-M, 2008 WL 552752, at *3 (W. D. Okla. Feb. 28, 2008) (holding that the ALJ erred when he failed to obtain medical records for pro se plaintiff in prison). The ALJ in this case would not have had difficulty locating the additional records. Compare Breedlove, 1997 WL 572145 at 1 (stating that the ALJ would have been sent on a fishing expedition because the plaintiff did not state what records the ALJ should have obtained). Therefore, the ALJ erred when he did not attempt to locate plaintiff's records from the Good Samaritan Clinic. See Hawkins v. Chater, 113 F.3d 1162, 1168 -69 (10th Cir. 1997) see also Ybarra v. Astrue, No. 08-cv-01243-WYD, 2009 WL 3162240, at *3-4 (D. Colo. Sept. 30, 2009) (remanding case after finding that the ALJ failed to fully develop the record).

Second, defendant contends that the ALJ has a duty to obtain only pertinent medical records and that the record was adequately developed without the additional medical records.

The court finds that plaintiff's medical records from August 2006 to June 2007 could be pertinent had the ALJ obtained them. Without them, the ALJ did not have a fully developed record. The ALJ noted in his decision that plaintiff received occasional treatment from the Good Samaritan Clinic for urinary and kidney infections. The record

-5-

dated March 29, 2006, stated that plaintiff had been restarted on Effexor and was improving. (Doc. 9 at 23-24). However, plaintiff's February 1, 2007, record indicates that she wanted to try a different medication because she did not think Effexor was helping. (Doc. 14 at 19). Plaintiff asked about Cymbalta on May 4, 2007, and her medication was subsequently changed. (Doc. 14 at 18).

Furthermore, plaintiff told the ALJ that her Effexor medication was changed to Cymbalta and the Detrol LA medication was changed to Vesicare. The ALJ apparently credited this statement because he gave plaintiff two weeks to submit the recent records. (Doc. 9 at 25). Plaintiff's additional medical records support her statement to the ALJ. The ALJ went on to note that plaintiff had only been to the Good Samaritan Clinic six or seven times since 2004 for medication concerning her kidney and urinary infections. (Doc. 9 at 25). Again this finding of fact was made without consideration to plaintiff's records from August 2006 to June 2007.

The ALJ also found after reviewing plaintiff's records through May 2006, that her reported inability to hold her urine was not persistent and that she was not currently taking medication for this problem. (Doc. 9 at 25). However, plaintiff complained of inability to hold her urine and was diagnosed with an overactive bladder in the November 2006 medical record. Plaintiff was taking Detrol LA but was switched to Vesicare. (Doc. 14 at 20).

The court finds that plaintiff's additional records were pertinent and available before the ALJ made his decision. Plaintiff has shown prejudice by establishing that the missing medical records could have been important to the ALJ in resolving the issue of

disability.  See Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) for the position that when records are available, the plaintiff may need to show prejudice as a result of the missing records.)  The ALJ erred by not obtaining plaintiff's additional records and further did not have a fully developed record without them.

**IV. CONCLUSION**

The court adopts the Recommendation and Report (Doc. 19) for the reasons set forth therein.  The case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings to address the magistrate judge's and this court's concerns expressed herein.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).

Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.

The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.
Dated this  21st  day of June 2010, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE